**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

AMY COBURN,

    Plaintiff,

v.

PN II, INC., et al.,

    Defendants.

Case No. 2:07-CV-00662-KJD-LRL

**ORDER**

Currently before the Court is Defendants' Motion for Summary Judgment (#46). Plaintiff filed a response in opposition (#49) to which Defendants replied (#51). Also before the Court is Defendants' Motion to Dismiss Plaintiff's Claims for Destruction of Evidence (#56). Plaintiff filed a response in opposition (#61) to which Defendants replied (#62).

**I.  Facts**

Plaintiff Amy Coburn worked for Defendants from approximately March 25, 2004, until her termination on April 25, 2006. She was hired as Area Vice President for Product Development by Cheryl Palmer, Area President, and Sean Degen, the National President for Product Development. During her first year of employment she was given a 40% increase in salary to $179,000 and a bonus of a quarter of a million dollars, along with excellent performance reviews.

At the time of her hire, Defendants had seven females in executive level positions in their Las Vegas Offices. Approximately ten months after Plaintiff was hired, Sheryl Palmer was terminated purportedly for performance related reasons. At about that time, Plaintiff heard that Steve Petruska, Chief Operating Officer for Pulte Homes, Inc., had made a remark to the effect he was "tired of the whiney bitches of Las Vegas". Around the same time, Plaintiff became aware of a remark by Patrick

Bernie, Regional Vice President for Pulte Homes, Inc., stating that he was tired of the "General Hospital" atmosphere in Las Vegas.

Following Sheryl Palmer's termination, Plaintiff received an evaluation from Sean Degen who rated her performance below expectations. Thereafter, several meetings occurred between Plaintiff, Sean Degen and Matt Koart, Palmer's replacement as Nevada Area President. During those meetings, some of which were secretly recorded by Plaintiff who suspected she was being set up for termination, Degen and Koart informed her of what she needed to do to improve her performance. This led to Degen preparing a Performance Counseling memo to Plaintiff in which he outlined areas of improvement to be accomplished over a two month period. Demonstrating knowledge of Pulte Architectural Standards and Practices as set out in the House Process Methods and Tools Manual, developing an understanding of alternate construction methodologies for high density construction and the pros and cons of each, and becoming an expert on Pultes' product manual were among the improvements required.[1]

During the termination meeting attended by Plaintiff, Degen and Koart, the discussion turned to Plaintiff's suspicion that she was being terminated for reasons of gender. Degen responded that he would not do such a thing and Plaintiff agreed, however, she suggested that others might be behind it. Degen then went over the reasons for her termination briefly and reiterated that she had not accomplished the improvements requested. Those improvements included becoming an expert on Pulte's product manual, something Plaintiff admitted she had not accomplished. Degen testified in his deposition of an earlier product meeting shortly before her termination where Plaintiff had performed poorly. He criticized her at that time for lack of preparation, failure to organize the presentation, to prepare an agenda , or identify issues or solutions. He also quizzed her on items in the design manual she was told she had to master as part of her work plan and found that she missed every question. He informed her that other participants at the meeting had expressed that the

---

[1] See Defendants' Motion for Summary Judgment (#46), Exhibits 26 and 27.

meeting was a complete waste of time and that he agreed with their assessment. Degen informed her that the meeting had been a missed window of opportunity for her to gain credibility with her peers in the other disciplines. He explained that she had a credibility problem that she refused to recognize, especially given the number of conversations he had with her since November or December on the subject. This meeting was also surreptitiously recorded by Plaintiff. She admitted that she had not recently read the design manual.

Defendants seek summary judgment on all claims, asserting that Plaintiff cannot establish the elements for a claim of gender discrimination or that Defendant's reasons for terminating Plaintiff were pretextual. Plaintiff responds by arguing that her firing and the firing of other women executives in the Las Vegas offices, her previous good evaluations, pay raises and large bonuses, the remarks about the "whiney bitches of Las Vegas" and the "General Hospital" atmosphere, demonstrate gender discrimination and retaliation for her complaints about it.

**II.  Standard for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the non-moving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual

issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

**III. Analysis**

**A. Gender Discrimination or Disparate Treatment**

To state a *prima facie* case of disparate treatment under Title VII, plaintiff must show that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably.  See Bergene v. Salt River Project Agr. Imp. and Power Dist., 272 F.3d 1136, 1140 (9th Cir. 2001);  see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);  Foss v. Thompson, 242 F.3d 1131, 1134 (9th Cir. 2001).   Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct.  See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991) (superseded by statute on other grounds as recognized in Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027 (9th Cir.2005)).  The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination.  Id.

Defendant avers that Plaintiff has failed to establish that she was performing according to her employer's legitimate expectations because she did not learn the Pulte design manual. Plaintiff admitted she had not read it recently following the meeting where Degen pointed out her deficiencies. This was a responsibility she was informed of when she was hired and handed the manual.[2] With salary and bonus payments totaling over $420,000.00 in 2005, the employer could reasonably expect that level of expertise and knowledge of Pulte's product and design manual. The uncontradicted testimony of Degen, whom she considered a friend and someone who on his own would not discriminate against her based on gender, was that she was not proficient in those and other responsibilities.

Additionally, Defendant avers that Plaintiff has failed to establish the fourth element required to establish a *prima facie* case of disparate treatment because she cannot prove that other similarly situated employees outside of her protected class were treated more favorably. Defendants have produced evidence that male executives were also terminated for poor performance and other males were terminated as part of reductions in force. With respect to Plaintiff's allegation that all seven female executives at Pulte's Las Vegas office were terminated, Defendant has established that only Palmer and Plaintiff were terminated for performance reasons. Of the others, one was reassigned, one retired, one resigned, one was laid off as part of a reduction in force along with fifty percent (50%) of Pulte's work force more than a year after Plaintiff's termination, and the remaining female was promoted to a National Vice President position.

Furthermore, even if Plaintiff had stated a *prima facie* case of discrimination, Plaintiff has not set out direct or circumstantial evidence that her employer's legitimate non-discriminatory reason for its decision to terminate Plaintiff was a pretext for actual discrimination. A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence. See Coghlan v. Am. Seafoods

---

[2] See Deposition of Sean Degen (#67) at 130:20-132:5, Defs.' Mot. for Summ. Judg. (#46), Exhibit 28.

Co. LLC, 413 F.3d 1090, 1094-95.  Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998).  Direct evidence typically consists of clearly sexist, racist or similarly discriminatory statements or actions by the employer.  See Coghlan 413 F.3d at 1095. "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination."  Id.

However, the Ninth Circuit has held that "where the same actor is responsible for both the hiring and firing of a discrimination plaintiff...a strong inference arises that there was no discriminatory action."  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996). When, as in this case, "the allegedly discriminatory actor is someone who has previously selected the plaintiff for favorable treatment, that is very strong evidence that the actor holds no discriminatory animus, and the plaintiff must present correspondingly stronger evidence of bias in order to prevail." Coghlan, 413 F.3d at 1097 n.10.   Thus, the question is whether  the "whiney bitches" and "General Hospital" remarks are stronger evidence of bias.  See Coghlan, 413 F.3d at 1098.

Here, the Court cannot find that the remarks are any more than "stray remark[s]" without any connection to the decision to terminate Coburn based on her job performance.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1997); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (stray remarks unrelated to decisional process insufficient to establish discrimination); Smith v. Firestone & Rubber Co., 875 F.2d 1325, 1330 (7th Cir. 1989)(remarks unrelated to decisional process even when made by the decision-maker in issue are insufficient to demonstrate that employer relied upon illegitimate criteria)(citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)(O'Connor, J. concurring)).

Therefore, the Court finds, even when viewing the facts in a light most favorable to Plaintiff, that Plaintiff has failed to overcome the burden of the same-actor inference by failing to present correspondingly stronger evidence of bias.  See Coghlan, 413 F.3d  at 1097 n.10.  Plaintiff has not

6

produced any evidence in support of her stated suspicion that someone other than Degen or Koart ordered her termination. Nor has Plaintiff established that similarly performing males were treated differently. Accordingly, Defendants are entitled to summary judgment on the claim of gender discrimination or disparate treatment.

### B. Retaliation

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee for opposing any unlawful employment practice. To establish a *prima facie* case for retaliation, Plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See Porter v. Cal. Dep't of Corrs., 419 F.3d 885, 894 (9th Cir. 2005). When a plaintiff has asserted a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision. See id. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. See id.

In this action, Plaintiff has shown that she engaged in protected activity by complaining about the "whiney bitches" and "General Hospital" remarks in late June of 2005. She was evaluated in December of 2005 and terminated in late April of 2006. Causation can be inferred from timing of the adverse employment action when it occurs soon after the employee's protected expression.

Plaintiff argues that on February 13, 2006 when she informed Degen of the remarks of Petruska ["the whiney bitches of Las Vegas"], she was put on a work plan the same day. However, Degen's e-mail transmittal to Plaintiff establishes that even though he sent it to her the same day the email references a conversation he had with her concerning the plan a week earlier.[3] Degen testified it took him approximately 30 days to draft. The work plan does not appear to have been something

---

[3] Defs.' Mot. for Summ. Judg. (#46), Exhibit 27.

that could have been produced within the same work day as the meeting with Plaintiff on February 13, 2006.

Koart testified that Plaintiff never informed him that she was the subject of discrimination in those terms, but instead spoke in terms of some people having "political agendas" but refused to say who or what they were. This is consistent with the secretly recorded conversation with Degen where Plaintiff spoke in ambiguities on the same subject. Plaintiff's testimony about talking to Koart, after being instructed to do so by Degen, was that she expressed concerns that she was not being evaluated fairly. The fact that the complained of remarks, even assuming both occurred[4], were made to someone other than those taking the adverse employment action, and the length of time between the remarks and the adverse action, undercuts the claim of retaliation. See Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986). The termination action occurred over ten months after the remarks were made. The Court cannot find that Plaintiff has shown a causal link between her complaint and her termination.

However, even if the Court were to find a causal link existed, as stated above, the employer's legitimate, non-discriminatory reason for its decision to terminate Plaintiff are well-documented and not controverted by responsive evidence from Plaintiff that she possessed the requisite knowledge of the Pulte design manual or that her performance met the reasonable expectations of her employer. Moreover, it was Degen, the person who ultimately terminated Plaintiff, who directed her to report her concerns about possible discrimination to Koart. Plaintiff has not produced evidence of pretext demonstrating that her complaints were an actual or substantial motivating factor in her termination rather than Defendants' nondiscriminatory explanation. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

---

[4] The "whiney bitches of Las Vegas" comment attributed to Steve Petruska is purely hearsay and inadmissable.

8

### C. Equal Pay Act Claim

Plaintiff was paid more than her predecessor and her eventual successor. Moreover, she did not respond to Defendants' evidence in support of the motion for summary judgment on this claim and conceded to dismissal of the claim. Local Rule 7-2(d) allows the Court to consider failure to file points and authorities in opposition to a motion as consent to the granting of the motion. Accordingly, good cause being found and in accordance with LR7-2(d), the Court grants Defendants' motion for summary judgment on this claim.

### D. Motion to Dismiss for Destruction of Evidence

Defendants' Motion to Dismiss for Destruction of Evidence is based on the claim that Plaintiff had evidence on her home computer destroyed just two days before the execution of a court-ordered forensics examination of that computer. It is alleged that she manually deleted almost 4,000 files containing relevant search terms before her computer hard drive was cloned for examination. When the forensics examiners recovered those portions of the deleted files that had not yet been permanently overwritten with other data, Plaintiff refused to produce them to Defendants. Plaintiff ran a "cleaner" program that systematically destroyed certain documents from her computer just two days before the court-ordered production. Plaintiff asserts that such activities were automatic or part of scheduled service however, this explanation is contradicted by her own technician who claims that he did not set the program to automatically remove user created data files. The computer settings were manually altered on July 21, 2007, and again on May 7, 2008 at 8:15 p.m. according to Vestige, the court appointed forensics examiner assigned to examine Plaintiff's computer. As stated, Plaintiff was under a court order to allow a forensics examination of the computer two days later.

The foregoing allegations are sufficient that the Court would have held an evidentiary hearing were summary judgment not to be granted. Such a hearing may still be necessary in the event attorney fees or sanctions become an issue. For present purposes, the Court denies the Motion to Dismiss as moot, but without prejudice to renewal on proper showing.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#46) is **GRANTED;**

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#56) is **DENIED as moot without prejudice**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 31st day of March 2009.

_____
Kent J. Dawson
United States District Judge